**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                    :
KIRK PUGH,                          :          Civil No. 04-4721 (WJM)
                                    :
            Petitioner,             :
                                    :
      v.                            :          **O P I N I O N**
                                    :
KATHRYN MACFARLAND, et al.,         :
                                    :
            Respondents.            :
_____:

**APPEARANCES:**

> KIRK PUGH, #115125B
> Bayside State Prison
> Medium Unit C 1-2-7
> P.O. Box F-1
> Leesburg, New Jersey  08327
> Petitioner pro se

> LUCILLE M. ROSANO, Special Deputy Attorney General
> ACTING ESSEX COUNTY PROSECUTOR
> Essex County Courts Building
> Newark, New Jersey  07102
> Attorneys for Respondents

**MARTINI**, District Judge

Kirk Pugh filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a),

supplemented by a Brief, challenging a judgment of conviction in the Superior Court of New

Jersey.  Respondents filed an Answer, arguing that the Petition should be dismissed on the

merits.  For the reasons expressed below, the Court dismisses the Petition with prejudice and

declines to issue a certificate of appealability.  See 28 U.S.C. §§ 2253(c), 2254(a), (b), (c).

## I.  BACKGROUND

Petitioner challenges a judgment of conviction entered on July 22, 1996, in the Superior Court of New Jersey, Law Division, Essex County, after a jury convicted him of carjacking, robbery, and possession of an imitation firearm for an unlawful purpose.  The Law Division sentenced Petitioner to a 25-year term of incarceration, with a 10-year period of parole ineligibility, for carjacking, and a concurrent 17-year sentence for robbery.  Petitioner appealed.  In an opinion filed April 2, 1998, the Appellate Division of the Superior Court of New Jersey affirmed.  State v. Pugh, No. A-426-96T4 slip op. (App. Div. April 2, 1998).  On June 30, 1998, the Supreme Court of New Jersey denied certification.  State v. Pugh, 156 N.J. 387 (1998) (table).

On August 31, 1998, Petitioner signed a state petition for post conviction relief and presumably handed it to prison officials for mailing to the Law Division.  On August 24, 2000, the Law Division denied relief.  Petitioner appealed, and in an opinion filed December 23, 2003, the Appellate Division affirmed the order denying post conviction relief.  State v. Pugh, No. A-4240-01T4 slip op. (App. Div. Dec. 23, 2003).  The Supreme Court of New Jersey denied certification on March 11, 2004.  State v. Pugh, 179 N.J. 371 (2004) (table).

Petitioner executed the Petition which is now before the Court on June 24, 2004.  The Clerk received it on September 27, 2004.  The Court notified Petitioner of the consequences of filing such a Petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA") and gave him an opportunity to withdraw the Petition and file one all-inclusive Petition, pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  The Petition presents three grounds, which are set forth below verbatim:

2

Ground One:  Evidence obtained pursuant to an Unconstitutional Search & Seizure:  Pursuant to an Unlawful Arrest.

Ground Two:  Constitutional guarantee of Due process to a Fundamentally fair Trial, and Self-Incrimination.

Ground Three:  Ineffective Assistance of Counsel.

(Pet. ¶¶ 12.A. - 12.C.)

The State filed an Answer, arguing that the Petition should be dismissed.  Petitioner filed a Reply to the Answer.

## II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997).  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982).  "If a state prisoner alleges no deprivation of a federal right, §

2254 is simply inapplicable.  It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts." Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief.[1]  Nor may the Court recharacterize a ground asserted under state law into a federal constitutional claim.[2]  "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citations and internal quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

A district court must give deference to determinations of state courts. Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87,

---

[1] See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying Miranda, the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the Miranda warnings to be involuntary under due process criteria"); Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition contains ground asserting the ineffective assistance of counsel during plea negotiations and trial, court is not permitted to  consider ground, evident from the facts but not raised in the petition, that appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction).

[2] See Engle, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); Kontakis v. Beyer, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights).

90 (3d Cir. 1996).  Federal courts "must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary."  Stevens v. Delaware Correctional Center, 295 F.3d 361, 368 (3d Cir. 2002).  Where a federal claim was "adjudicated on the merits" [3] in state court proceedings, § 2254 does not permit habeas relief unless adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "'contrary to' a Supreme Court holding if the state court 'contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result."  Rompilla v. Horn, 355 F.3d 233, 250 (3d Cir. 2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Williams,

---

[3] "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."  Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (quoting Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir.2001)).  A state court may render an adjudication or decision on the merits of a federal claim by rejecting the claim without any discussion whatsoever.  Rompilla, 355 F.3d at 247.

529 U.S. at 413.  Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.  Id. at 409-10.

A court begins the analysis by determining the relevant clearly established law.  See Yarborough v. Alvarado, 541 U.S. 652, __, 124 S.Ct. 2140, 2147 (2004).  Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412.   A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

### III.  DISCUSSION

A.  Photograph

In Grounds One and Two, Petitioner challenges his arrest and the taking of his photograph by the police.  He asserts in Ground One:

> Ground One:  Evidence obtained pursuant to an Unconstitutional Search & Seizure:  Pursuant to an Unlawful Arrest.
>
> Supporting FACTS:  On September 25, 1995 Union County; NJ. Police Officers arrested me for possession of stolen auto subsequently Essex County, NJ. Police came to precinct where I was being held and forced me to take photograph even though I informed them I had nothing to say and that I did not want to take any pictures without a lawyer being present to which they replied I had no choice because I was under arrest without any court order or reading me my rights.

(Pet. ¶ 12.A.)  In Ground Two, Petitioner complains that the taking of the photograph violated his Fifth Amendment privilege against self-incrimination.

The Self-Incrimination Clause of the Fifth Amendment, applicable to states through the Fourteenth Amendment, provides that no "person . . . shall be compelled in any criminal case to

be a witness against himself." U.S.Const. amend. V.  The privilege against self-incrimination

was not violated by the taking of a photograph of Petitioner after his arrest because the Supreme

Court has "long held that the privilege does not protect a suspect from being compelled by the

State to produce 'real or physical evidence.'" Pennsylvania v. Muniz, 496 U.S. 582, 589 (1990)

(quoting Schmerber v. California, 384 U.S. 757, 764 (1966)). As Justice Holmes explained in

1910, "[t]he prohibition of compelling a man in a criminal court to be witness against himself is

a prohibition of the use of physical or moral compulsion to extort communications from him, not

an exclusion of his body as evidence when it may be material." Holt v. United States, 218 U.S.

245, 252-53 (1910).  Significantly, the Supreme Court noted in Schmerber that the Fifth

Amendment "offers no protection against compulsion to submit to fingerprinting, photographing,

or measurements, to write or speak for identification, to appear in court, to stand, to assume a

stance, to walk, or to make a particular gesture." Schmerber, 384 U.S. at 764; see also United

States v. Wade, 388 U.S. 218, 222 ("We have no doubt that compelling the accused merely to

exhibit his person for observation by a prosecution witness prior to trial involves no compulsion

of the accused to give evidence having testimonial significance").  Under these circumstances,

the photographing of Petitioner by the police did not violate his privilege against self-

incrimination.

      The Fourth Amendment, applicable through the Fourteenth Amendment, protects "[t]he

right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

searches and seizures." U.S.Const. amend. IV.  Although Petitioner's arrest was a seizure, the

police did not violate his Fourth Amendment rights because, at the time of the warrantless arrest,

the police had probable cause to make it, i.e., "the facts and circumstances within their

knowledge and of which they had reasonably trustworthy information were sufficient to warrant

a prudent man in believing that the [suspect] had committed or was committing an offense."

United States v. Kithcart, 134 F.3d 529, 531 (3d Cir. 1998) (quoting Beck v. Ohio, 379 U.S. 89,

91 (1964)).  Nor did the police violate Petitioner's Sixth Amendment right to counsel by taking

his photograph.  See Kirby v. Illinois, 406 U.S. 682 (1972) (Sixth Amendment right to counsel

not implicated during show-up identification at police station).  Petitioner is therefore not entitled

to habeas relief based on the arrest and the taking of the photograph.

B.  Due Process

        In Ground Two, Petitioner asserts that he was denied due process and fundamental

fairness when his "mug shot was shown to the jury causing undue prejudice . . . [and] when [he]

was paraded in handcuffs by bailiffs in front of the victim with prosecutor Zuckerman and

arresting officer Fumefreddo on either side."  (Pet. ¶ 12.B.)

        Petitioner challenges the admission of his mugshot on due process grounds.  The

difficulty with this claim is that the admissibility of evidence is a question of state law.  See

Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court, however,

cannot decide whether the evidence in question was properly allowed under the state law of

evidence"); Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978) ("As to the contention that the

trial court erred in admitting the victim's testimony of a prior flirtatious conversation, we find

that, if there was any error in the court's ruling . . . that error was at best one of interpretation of

the state's law of evidence and did not arise to constitutional dimensions").  Because the

admission of the mugshot did not violate clearly established federal law, as determined by the

Supreme Court, Petitioner is not entitled to habeas relief on that ground.

Petitioner further claims that his conviction violates due process because it was based on an impermissibly suggestive out-of-court identification by the eye witness. The Supreme Court has observed that improper pretrial identification procedures by police may cause witnesses to misidentify a criminal. See Simmons v. United States, 390 U.S. 377, 383 (1968). In that case, "the witness thereafter is apt to retain in his memory the image of the [misidentification] rather than that of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification." Id. at 383-84. As the Supreme Court noted, "[it] is, first of all, apparent that the primary evil to be avoided is "a very substantial likelihood of irreparable misidentification." Simmons, 390 U.S. at 384. "It is the likelihood of misidentification which violates a defendant's right to due process . . . . Suggestive confrontations are disapproved because they increase the likelihood of misidentification." Neil v. Biggers, 409 U.S. 188, 198 (1972).

On the other hand, where "identifications were entirely based upon observations at the time of the [incident] and not at all induced by the conduct" of the pretrial identification procedures, identifications will not violate due process. Coleman v. Alabama, 399 U.S. 1, 7 (1970). The central question is "'whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive." Manson v. Brathwaite, 432 U.S. 98, 106 (1977) (quoting Biggers, 409 U.S. at 199); see also Thomas v. Varner, 428 F.3d 491, 503 (3d Cir. 2005). Factors to be considered in evaluating the likelihood of misidentification include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the

9

criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Biggers, 409 U.S. at 199.

In this case, Petitioner contends that, because the victim observed him outside the courtroom "in handcuffs by bailiffs . . . with prosecutor Zuckerman and arresting officer Fumefreddo on either side whispering in his ear with menacing states," the in-court identification of Petitioner by the victim was tainted by the impermissibly suggestive out-of-court identification. (Pet. ¶ 12.B.) The facts surrounding the pretrial identification of Petitioner, as found by the Appellate Division on direct appeal, are as follows:

> On September 13, 1995, defendant and another person approached the victim, Majid Hasan, as he got out of his car to lock the gate of a private parking lot near his office in the Gateway complex in downtown Newark. Defendant brandished what turned out to be an imitation handgun, demanded Hasan's wallet, then jumped into the car and drove off with his associate. Hasan immediately reported the car stolen. At police headquarters, he gave a general description of the assailant as "African black type," 17 to 21 years old, having a medium build and a light beard. He was then shown hundreds of photos, but did not identify the carjacker. The officer who showed Hasan the photo book testified that Pugh's photo was not among those shown to Hasan at that time.

> On September 24, 1995, Union police officers in a marked car spotted the stolen car and activated their overhead lights. The driver led them on a high speed chase, eventually losing control of the vehicle. The police had to remove the uncooperative driver from the car. The driver was then identified as defendant. The officers found what turned out to be an imitation handgun on the floor of the car . . . . The police took photos of Pugh upon his arrest, and then showed Hasan a six-photo array. Hasan picked out the defendant and unequivocally identified him as the perpetrator with the gun who drove off with the car. Defendant is actually older, heavier, and lighter-skinned than Hasan's original description.

State v. Pugh, No. A-426-96T4 slip op. at 2-3.  The Appellate Division considered and rejected Petitioner's claim that the out-of-court identification procedures tainted the victim's in-court identification:

> We find no reversible error in admitting the victim's in-court identification.  Cross-examination brought out all of the inconsistencies between Hasan's original description and defendant's actual appearance, and the jury had the opportunity to consider defendant's arguments with respect thereto.  The allegedly improperly admitted "mugshot" is the photo taken after defendant's arrest on this charge.  Since the jury obviously was aware of defendant's arrest, no prejudice can be found.

State v. Pugh, No. A-426-96T4 slip op. at 4.

The New Jersey courts' decision that the in-court identification was reliable was not contrary to or an unreasonable application of the factors which the Supreme Court requires to be considered in evaluating the likelihood of misidentification.  Biggers, 409 U.S. at 199.  Hasan had a clear opportunity to view the criminal at the time of the crime; Hasan was paying attention; and, prior to seeing Petitioner in handcuffs on the day of trial, Hasan had unequivocally identified Petitioner's photograph from a non-suggestive array of photographs 11 days after the carjacking.  Under these circumstances, the Appellate Division's adjudication of Petitioner's tainted identification claim was not contrary to or an unreasonable application of Biggers and other Supreme Court jurisprudence.

C.  Ineffective Assistance of Counsel

In Ground Three, Petitioner asserts "Denial of Effective Assistance of Counsel."  As factual support, Petitioner states the following:

> Upon my first meeting with counsel (Ms. Olivia Smith) I gave her my alibi and names of witnesses.  Her reply was that she did not

11

believe me and would not file any motion or do an investigation on my behalf (1-28-96).  At my second arraignment in front of Judge Sacher I informed him of it as well.  At first pretrial arraignment 6/17/96 I informed Judge Levy that my counsel was inept or failing to represent me.  Again 6-19-96 my lawyer tries to get me to plea to a robbery that must be dismissed because Complainant commits suicide; without informing me off this major change, and when she does it's in open court disregarding client/attorney privilege and privacy.  I was forced to state on the record that I paraded for identification purpose handcuffed by court bailiffs through the hallway where the victim was sitting - with prosecutor Zucherman and arresting officer Fumefreddo on either side of him whispering in his ear with menacing stares at me.  Lawyer should have asked for dismissal, mistrial, and definitely a wade hearing which would have put the state on the defense about its tainted I.D. of me.  Also lawyer failed to ask for a clawan's [sic] charge in a timely manner to which judge Levy rebuked her for on record.

(Pet. ¶ 12.C., Supporting FACTS.)

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  Strickland at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Id. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide

12

range of professionally competent assistance.  <u>Id</u>.  Second, the defendant must show that "there is

a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt

respecting guilt." <u>Id</u>. at 695.

      In this case, Petitioner raised ineffective assistance claims on direct appeal and post

conviction relief.  On direct appeal, the Appellate Division summarily rejected Petitioner's

ineffective assistance claims concerning the failure to seek a <u>Wade</u> hearing, failure to make

timely application for a <u>Clawans</u> charge, and failure to tell Petitioner immediately and privately

that the victim in another pending robbery charge had committed suicide.

      Petitioner raised his ineffective assistance of counsel claims again on post conviction

relief.  The Law Division rejected the grounds after taking testimony from Petitioner.  The

Appellate Division adopted the findings and reasoning of the Law Division, noting the following:

> One of the principal assertions of ineffective assistance of
> counsel was the alleged failure of counsel to investigate the
> whereabouts of the purported "seller" of the car to defendant.
> Until the hearing on the PCR, this individual was identified as
> "Dywaun."  At the hearing, defendant conceded that he never
> informed counsel that the individual's full name was "Dywaun
> McDaniel" nor did he inform counsel as to McDaniel's address.
> More significantly, defendant revealed that McDaniel was dead
> and not available to corroborate defendant's claim that McDaniel
> sold defendant the car.  Finally, defendant conceded that he never
> informed counsel of the name of another colleague who defendant
> claims also used the car.

<u>State v. Pugh</u>, No. A-4240-01T4 slip op. at 5-6.

      Petitioner is not entitled to habeas relief on his ineffective assistance of trial counsel

claims because he has not shown that the adjudication of the claim by the New Jersey courts

resulted in a decision that was contrary to, or involved an unreasonable application of, <u>Strickland</u> and its progeny.

D.  Certificate of Appealability

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  <u>See Miller-El v. Cockrell</u>, 537 U.S. 322 (2003).

## IV.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition with prejudice and declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).

s/William J. Martini

_____

WILLIAM J. MARTINI, U.S.D.J.

DATED: <u>December 28,</u> 2005